THE NEW HAVEN SAVINGS BANK *vs.* WILLIAM J. ATWATER.

A savings bank held a mortgage on land of the defendant, upon which it obtained a decree of foreclosure. Between the date of the decree and the day of redemption the first day of October intervened, and the defendant, solely for the purpose of avoiding liability for the taxes that might be assessed against the property on the list of that date, made and put on record a deed of it to an irresponsible person, who never accepted or knew of it, the defendant remaining in possession and taking the rents and profits. The property being assessed as that of the grantee and the taxes assessed upon it not being paid, the savings bank was compelled to pay them to save the property from a tax lien. In a suit brought by the savings bank to recover of the defendant the amount so paid, it was held—

1. That the defendant's act was a fraud on the plaintiff.
2. That if no title passed to the nominal grantee, so that the assessment was illegal as made against a person not owning the property, the plaintiff was estopped from setting up that fact.
3. That it was no defence that the property was of sufficient value to pay the taxes as well as the mortgage debt.

[Argued December 7th, 1883—decided February 1st, 1884.]

ACTION to recover money paid for taxes on mortgaged property; brought by appeal from the judgment of a justice of the peace to the Court of Common Pleas. Demurrer to the complaint, and reservation for advice. The case is sufficiently stated in the opinion.

*W. C. Case* and *T. M. Maltbie,* in support of the demurrer.

*J. W. Alling,* contra.

CARPENTER, J. The plaintiff was mortgagee, and the defendant was the owner of the equity of redemption, of certain real estate situated in New Haven. On the 30th day of September, 1880, a decree was passed foreclosing the equity of redemption on the first Monday in January, 1881, unless the debt was paid on or before that day. The defendant was then in possession of the property, taking to

himself the rents and profits. On that day, for the sole purpose of relieving himself of the taxes about to be levied as of October 1st, 1880, and of compelling the plaintiff to pay them, he executed and caused to be recorded a deed of the premises to one McNamara, a non-resident and irresponsible person. The defendant however remained in possession of the property, receiving the rents, until the decree became absolute. McNamara knew nothing of the deed until after the time for redemption had expired. He never in fact contracted for the deed or accepted it; and the law will not presume that he accepted it, because it was not for his advantage to do so. The title then did not pass from the defendant to McNamara. He remained the owner and the tax of right should have been assessed against him; but his artifice succeeded, and it was in fact assessed against McNamara. The tax of course was not paid, and in January, 1882, the plaintiff, who then owned the property, was compelled to pay it to free the property of the tax lien. Soon after the plaintiff demanded of the defendant the sum so paid and he refused to pay it. The complaint showing these facts was demurred to, and the case was reserved for our advice.

We think the plaintiff is entitled to recover. The act of the defendant was wrongful. It was calculated and designed to defraud the plaintiff. The defendant knew that the property could not escape taxation. He knew that it could not be assessed against and collected of McNamara because he was irresponsible, and moreover was not the real owner of the equity of redemption. He must have known also that the tax would be assessed against the apparent owner and that, in order to collect it, it would be necessary to resort to the law, and thus the plaintiff would be compelled to pay it. The defendant doubtless intended just that result.

We will not stop to inquire whether the plaintiff could have resisted payment on the ground that the tax was assessed against a person who did not in fact own the property. It was so assessed because of the defendant's wrongful act; consequently he is not at liberty to take advantage of

the illegality. He cannot escape the consequences of his own improper conduct by showing that the plaintiff had it in its power to transfer those consequences from itself to others. If he could, that would allow him to set up his own fraudulent conduct, which is the gist of the action, as a defense, and thus take advantage of his own wrong. It simply makes the municipalities the victims instead of the plaintiff, and permits the defendant to retain the fruits of the fraud.

But the defendant insists that he was under no legal obligation to pay the taxes, and therefore the plaintiff can have no claim against him. There is no force in this suggestion. The argument seems to be this:—By reason of my fraudulent misconduct I am under no legal obligation; as I am under no legal obligation I am not liable for my fraud. The ground of the defendant's liability is not a promise, express or implied, but a tort, and the defendant's exemption from a legal obligation to pay the taxes as such is an element in the case which contributed largely to the plaintiff's injury; indeed without it the fraud would not have succeeded. The logic then in few words is, " my fraud was successful, therefore I am to be excused."

The defendant also insists that he had a perfect right to convey his property to avoid taxation. A party may, in good faith, dispose of his property and thereby escape taxation; but when, as in this case, he retains the possession and income and only transfers to another the burden of taxation without his consent, it presents a very different question, both in law and ethics. If the defendant had simply desired to escape taxation legitimately and honestly, probably the plaintiff would have accepted a deed with the possession, and then the taxes would have been assessed to and paid by the plaintiff without complaint. But it was only a part of his purpose to escape taxation; he intended at the same time to retain the rents, and so this scheme was devised, which, if successful, operates as a fraud. The law will not suffer itself to become a party to, and aid in the consummation of, a fraud; nor is it powerless to relieve

against tricks and devices of this character whenever and wherever it can detect and lay its hand upon them.

The defendant insists that inasmuch as it does not appear that the property mortgaged is insufficient to pay the debt and taxes, it does not appear that the plaintiff has suffered any damage. The value of the property is immaterial; the matter of damage does not depend upon it at all. It is no answer to a charge of fraud that the party defrauded has abundant means. If he acquired them legitimately they are his; if otherwise, he can be deprived of them only by direct and legal methods. If the equity of redemption was valuable the defendant should have redeemed. He cannot be permitted to avail himself of it by fraud.

The Superior Court is advised that the complaint is sufficient.

In this opinion the other judges concurred.